| Russotto v Lucido |
| :---: |
| 2024 NY Slip Op 30537(U) |
| February 20, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 518304/2019 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 20th day of February 2024.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------------X
PIERA RUSSOTTO and ANTONIO RUSSOTTO,

      Plaintiffs,

   -against-

JEFFREY V. LUCIDO, DPM, NYU LUTHERAN ASSOCIATES-77TH STREET PODIATRY and NYU LANGONE HOSPITAL BROOKLYN,

     Defendants.
--------------------------------------------------------------------------X
**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

**DECISION & ORDER**

Index No. 518304/2019
 Mo. Seq. 1

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> 23 – 44, 46 – 50

Defendants Jeffrey V. Lucido, DPM ("Dr. Lucido"), NYU Lutheran Associates-77th Street Podiatry ("NYU Podiatry"), and NYU Langone Hospital Brooklyn ("NYU Langone") move for an Order, pursuant to CPLR 3212, awarding summary judgment to Defendants and dismissing Plaintiffs' complaint in its entirety.

Plaintiffs oppose Defendants' motion as to the claims against Dr. Lucido. Plaintiffs did not oppose the branch of the motion seeking summary judgment on behalf of NYU Podiatry and NYU Langone, and they did not address Defendants' arguments as to vicarious liability in their opposition papers. Accordingly, the branch of the motion on behalf of NYU Podiatry and NYU Langone is granted without opposition.

Plaintiffs commenced this action on August 19, 2019, for medical malpractice against Dr. Lucido, NYU Podiatry, and NYU Langone in relation to treatment received by Piera Russotto ("Piera") from May 4, 2017, through October 5, 2017. Piera's husband, Antonio Russotto, also asserted a cause of action for loss of consortium.

Piera first sought treatment from Dr. Lucido on May 4, 2017, following a referral from her primary care physician. At the initial visit, Piera complained of acute pain in her left hallux (big toe). Dr. Lucido

1

[* 1]

performed a podiatric examination, including x-rays, and diagnosed Piera with bilateral fungus, ingrown toenail, and subungal exostosis (bone/fibrocartilage growth) in her left hallux. Dr. Lucido performed an in-office procedure on her ingrown toenail. On May 30, 2017, at NYU Langone, Dr. Lucido performed a matrixectomy and exostectomy on Piera's left hallux and left third toe and correction of a third-digit left hammertoe with pin placement.

Following the surgery, Piera made several follow-up visits to Dr. Lucido through October 5, 2017, before ceasing treatment with him. She continued to complain of pain, discomfort, and numbness, which persisted or worsened following the surgery. On a September 7, 2017 visit, Dr. Lucido performed an in-office procedure to remove a regrown portion of ingrown toenail. Eventually Piera sought out second opinions from other podiatrists, visiting Dr. Frank Rinaldi on September 19, 2017, and Dr. Ralph Benzakein on September 28, 2017, and November 30, 2017. Dr. Rinaldi informed her that additional surgery may be done to remove "residual exostosis" in the left hallux and third toe. Dr. Benzakein did not recommend further surgery in Piera's initial visit. On the second visit, Dr. Benzakein informed Piera that surgical resection "could be attempted," but that it "would not guarantee proper nail growth or total relief of her symptoms." In December 2017, Piera visited Dr. Josephyine Kleyner and underwent an MRI, which revealed a "Morton's neuroma" or "benign thickening of the tissue around a nerve." In a more recent examination on September 14, 2021, she was diagnosed by Dr. Sandro Fasca with a left hammertoe, atherosclerosis of bilateral legs, toenail fungus, and keratosis of the plantar feet. Dr. Fasca did not recommend surgery due to "risks of infection and delayed healing."

Plaintiffs allege that Piera suffered aggravation and exacerbation of the condition in her left hallux and left third toe, as well as pain, cosmetic deformity, and scarring, as a result of Dr. Lucido's negligent misdiagnosis and unnecessary and improper surgical procedure. Plaintiffs also allege that Piera will require additional surgeries as a result of the negligent treatment.

In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

"The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert

2

[* 2]

opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].

In support of the instant motion, Defendants submit, inter alia, an expert affidavit from Russell Caprioli, D.P.M., a licensed physician certified in podiatry and the current Chief of Podiatry at Long Island Jewish Medical Center. Dr. Caprioli opined, based on a review of Piera's history and medical records, that Dr. Lucido's treatment did not depart from good and accepted standards of care. Dr. Lucido evaluated Piera's symptoms through physical examination and x-rays and recommended proper surgeries to address her ingrown toenails and exostoses. Dr. Caprioli also opined that Dr. Lucido obtained informed consent from Piera through multiple discussions, some assisted by an interpreter, and he provided standard follow-up care and treatment after the surgery.

Addressing Plaintiffs' specific allegations of misdiagnosis or inconsistent medical records, Dr. Caprioli explained that although exostosis at the left hallux and left third toe were not substantially visible on a preoperative x-ray, this condition is generally not seen on x-ray but "felt on physical exam and seen intraoperatively." Dr. Caprioli also noted that "the standard of care requires a surgeon to be conservative when removing bone during exostectomy," because the removal of too much bone can create "more significant problems with ambulation and balance." Therefore, he opined that Dr. Lucido exercised appropriate medical judgment by not removing more bone during the surgery and by determining, after a visual intraoperative exam, not to perform a hammertoe correction on the right toe.

Defendants also rebutted Plaintiffs' allegations that Piera was prescribed a drug which she was allergic to. It is unclear from the records whether Dr. Lucido was the doctor who initially prescribed Naproxen, but even if he had, Piera testified in her own deposition that she never took the drug and thus did not suffer any harm causally connected to the alleged negligence in prescribing it.

Finally, although Piera visited multiple other podiatrists in 2017 and 2021, none of them indicated that she had suffered harm or scarring from an unnecessary or improperly performed surgery, nor any other care or treatment she received from Dr. Lucido. Rather, Dr. Rinaldi suggested she *return* to Dr. Lucido for additional bone removal, and Dr. Benzakein advised her that "the correct procedure was performed." Counter to Plaintiffs' allegations that Piera will *require* further surgery, the record demonstrates that multiple doctors either recommended against further surgery or merely discussed it as an option. Dr. Caprioli noted that the doctors who did recommend surgery did so as an extension to Dr. Lucido's more conservative intervention, not to "correct or repair" any work performed by him.

Based on the submissions, Defendants have met their prima facie burden of establishing entitlement to summary judgment. Relying on facts found in the record, the parties' depositions, and an expert podiatric

[* 3]

opinion, they have established that Dr. Lucido did not deviate from good and accepted standards of medical practice in his treatment of Piera, and that Piera did not suffer any harm that can be attributed to negligence or wrongdoing on Dr. Lucido's part.

In opposition, Plaintiffs rely on the affidavit of Dr. Jack Gorman, D.P.M., a retired physician and foot surgeon licensed in the state of Pennsylvania. After a summary of the medical treatment performed by Dr. Lucido, Dr. Gorman opined that Dr. Lucido deviated from the standard of care of a prudent podiatrist. Specifically, Dr. Gorman states that Dr. Lucido's notes were inconsistent, that there was no observable exostosis on the x-ray, that Piera was given excessive anesthesia and medication, and that Piera suffered "injury and pain which will require additional revision surgeries" due to Dr. Lucido's negligent performance.

As an initial matter, Dr. Gorman has established that he is qualified to render an expert opinion on the quality of care received by Piera. His affidavit outlines his educational background and his specialized training and credentials in podiatric medicine and ambulatory foot surgery. To the extent that Dr. Gorman's affidavit was notarized in the state of Florida without the certificate of conformity required by CPLR 2309 (c), this is an excusable defect that is not fatal to opposition on a motion for summary judgment (*see Stiso v Berlin,* 176 AD3d 888, 890 [2d Dept 2019] ["the court improvidently exercised its discretion in not considering the affidavit of the plaintiff's expert" solely on CPLR 2309 [c] grounds]; *see also* CPLR 2001).

Nonetheless, Dr. Gorman's expert affidavit is insufficient to raise a triable issue of fact, as he offers only conclusory opinions which contradict the record. Dr. Gorman states there was "no mention" of exostosis or treatment to Piera's hammertoe on her preoperative visits, but Piera called to ask about the third toe procedure on May 19, 2017. He avers that the exostosis treatment conflicted with what was seen on Piera's x-rays but does not offer a comparison to acceptable medical standards to counter Dr. Caprioli's argument that this condition would ordinarily not be visible by x-ray.

Dr. Gorman also repeats the allegation that Piera will "require additional revision surgeries," but this claim is supported by no evidence and contradicted by the records of non-parties, Dr. Rinaldi, Dr. Benzakein, Dr. Keylner, and Dr. Frasca. Some of these doctors flatly advised her against further surgery, while others stated that further surgery was possible, but they did not unconditionally recommend it. Notably, none of the doctors framed this surgery as a *correction* to mistakes made by Dr. Lucido. Dr. Benzakein reported in his evaluation that *Piera herself* causally connected her pain to the prior surgery, and she told him Dr. Rinaldi initially criticized the procedure but "changed his mind when he found out the name of the surgeon." These statements from Piera are not reflected in Dr. Rinaldi's own records, and Dr. Benzakein did not agree with her non-expert assessment.

Dr. Gorman does not provide any comparison to an acceptable standard of care in the proper administration of anesthesia. Furthermore, the allegations regarding Piera's anesthesia appear nowhere in the

4

[* 4]

bill of particulars. Dr. Gorman suggests Dr. Lucido performed a "ghost surgery with imaginary billing," doing nothing of significance to treat Piera's condition, but these allegations of fraudulent treatment were never asserted prior to the opposition papers.

Plaintiffs fail to raise a material issue of fact to withstand summary judgment. Plaintiffs' expert contradicts the evidence, raises only conclusory allegations, and offers theories not previously asserted in the bill of particulars (*see Townsend v Vaisman,* 203 AD3d 1199, 1203 [2d Dept 2022] ["a plaintiff cannot defeat a summary judgment motion that made out a prima facie case by merely asserting, without more, a new theory of liability for the first time in opposition papers"]. "Although conflicting expert opinions may raise credibility issues which can only be resolved by a jury, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Wagner v Parker,* 172 AD3d 954, 955 [2d Dept 2019] [internal citations omitted]).

With respect to the cause of action alleging a lack of informed consent, such a claim requires a showing

"that (1) the practitioner failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed and (2) a reasonable person in the plaintiff's position, fully informed, would have elected not to undergo the procedure or treatment (*see* Public Health Law 2805-d [1], [3]). Expert medical testimony is required to prove the insufficiency of the information disclosed to the plaintiff (CPLR 4401-a)" (*Orphan v Plinik,* 15 NY3d 907, 908 [2010])."

Defendants' expert, Dr. Caprioli, opined based on the record that Dr. Lucido properly discussed the risks, benefits, and alternatives to the procedure with Piera before she signed the written consent forms. Beginning on the May 4 visit, Dr. Lucido testified that he discussed treatment options with Piera and her husband, at times using an Italian interpreter. According to his deposition testimony and records, Dr. Lucido discussed the procedures in detail, including the possibility about a hammertoe procedure on her third toes. Piera signed consent forms for a matrixectomy and exostectomy of her left hallux, left third toe, and right third toe, although no procedure was ultimately performed on the right toe based on the intraoperative determination of Dr. Lucido. Piera made several documented follow-up visits and telephone calls to Dr. Lucido. She received preoperative testing on May 19, 2017, and clearance from her primary care physician on May 24, 2017.

In opposition to the motion, Defendants' expert raises no triable issue of fact on the issue of informed consent. Dr. Gorman's affidavit is silent on the issue and does not point to any evidence of deviation from reasonable disclosure. Accordingly, this branch of the motion is granted.

As Piera's causes of action sounding in medical malpractice against all Defendants are dismissed, the derivative claims of Antonio Russotto for loss of consortium are also dismissed.

Accordingly, it is hereby:

ORDERED that Defendants' motion (Seq. No. 1) seeking an Order, pursuant to CPLR 3212, awarding

5

[* 5]

summary judgment to Defendants is GRANTED, and the action is dismissed in its entirety with prejudice.

The Clerk is directed to enter judgment in favor of JEFFREY V. LUCIDO, DPM, NYU LUTHERAN ASSOCIATES-77th STREET PODIATRY, and NYU LANGONE HOSPITAL BROOKLYN.

This constitutes the decision and order of this Court.

ENTER.

_____

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**

6

[* 6]